Lee D. WATSON *v.* Lois Vernell WATSON

CA 80-312                                                    608 S.W. 2d 44
Court of Appeals of Arkansas
Opinion delivered December 3, 1980

*William W. Benton*, for appellant.

*Phillip H. Shirron*, for appellee.

DAVID NEWBERN, Judge. The parties were divorced in 1977, and custody of their two sons was awarded to the appellee. In 1979 the appellant petitioned for change of custody with respect to Jeffrey, the younger of the children, whose age was 11 at the time of the hearing on the petition. The appellant asked that the alimony which had been awarded to the appellee be abated because she had begun earning sufficient income to support herself. In a counter petition, as amended, the appellee denied that circumstances had changed so as to provide a basis for a change in custody, and she asked that she be allowed to remain in the appellant's mobile home, where she and the children had been allowed to dwell pursuant to the decree. The initial decree had provided she was to remain in the mobile home until the nearby house being constructed for her was completed, but in any event no longer than three years from the date of the decree.

The appellee further requested an increase in child support, alleging that the original award of $40 per week was no longer adequate. She also asked that her alimony not be abated because her income was not sufficient to support herself and the children. She requested further that the appellant be held in contempt for his violation of the court's order that he not harass her.

The chancellor held a hearing and entered an order stating that, (1) the petition seeking change of custody and abatement of alimony would be dismissed because evidence of changed circumstances was insufficient, (2) the appellant was in contempt and sentenced to a $1,000 fine and 30 days in jail, with all but $100 of the fine and 24 hours of the jail term suspended, because of his harassing acts toward the appellee, (3) the child support payments for the two children would be increased to $60 per week, and (4) the appellee's request she be allowed to remain in the mobile home was denied.

The appellant has appealed the denial of the change of custody, the increase in child support, and the court's refusal to abate the alimony.

## 1. *Change of custody.*

The appellant first sets out sections 1 and 3 of Acts of Arkansas (1979), No. 278, which recognized the need to abolish the consideration of the sex of a party seeking custody of a child and recognized the difficulty divorced fathers have had in obtaining custody of their children despite the fact they may have been more qualified than divorced mothers. If we were dealing in this case with the initial decree and being asked to consider evidence that the assignment of custody had been based upon the gender of the parties, Act 278 would be relevant. However, here we are concerned with a question of change in custody. We will consider, of course, the best interests of the child, *Digby* v. *Digby*, 263 Ark. 813, 567 S.W. 2d 290 (1978); *Kirby* v. *Kirby*, 189 Ark. 937, 75 S.W. 2d 817 (1934); and *Perkins* v. *Perkins*, 266 Ark. 597, 589 S.W. 2d 588 (Ark. App., 1979), and whether the chancellor's determina-

tion of that issue was clearly erroneous or clearly against the preponderance of the evidence. A. R. Civ. P. 52.

About the only change in circumstances to which the appellant refers as a basis for alleging the chancellor erred is the fact that the appellant has become remarried (for the second time since his divorce from the appellee) to a woman who is a full-time homemaker, and that he lives in a comfortable house where there is a room for Jeffrey. The appellant's wife of six months testified that she loved Jeffrey and would like to have him in their home. The appellant testified of his love for his son and his concern over an apparent learning disability for which he had sought treatment for Jeffrey.

In response to this argument, the chancellor referred to the misconduct of the appellant for which he had been found in contempt and stated he was completely unconvinced the appellant had "this child's best interest at heart."

Given the best interests guideline and the requirement that we find changed circumstances in that context, we cannot disagree with the chancellor or say that his decision was clearly erroneous. Certainly, the circumstances in which the child was placed when the decree was rendered are the same ones in which he continues to live today. There was evidence before the chancellor that the appellant had been arrested for public drunkenness and had been involved in disturbances of the peace in addition to his harassing conduct toward the appellee. Thus, despite the appellant's changed circumstances with respect to his home life, we cannot gainsay the chancellor's conclusion that circumstances as they affect Jeffrey have not changed or indeed that his interest would be better served if he were to live with his father.

A subsidiary raised by the appellant is the refusal of the trial court to give any weight to Jeffrey's testimony that he would prefer to live with his father. A number of our supreme court's decisions have approved the practice of considering the wishes of children, some of them quite young, with respect to custodial preference. *DeCroo* v. *DeCroo*, 266 Ark. 275, 583 S.W. 2d 80 (1979); *Carr* v. *Hall*, 235 Ark. 874, 363 S.W. 2d 223 (1963) (rev'd on rehearing on

other grounds); *Dill* v. *Dill*, 209 Ark. 445, 191 S.W. 2d 829 (1945). Although the *DeCroo* opinion said the testimony of a 13 year old was not "entirely without weight," we find no case denying the chancellor the discretion to decline to give weight to such testimony. Here, the chancellor permitted Jeffrey to testify but stated beforehand that he did not intend to give the testimony any weight.

Problems at school had led Jeffrey's mother to seek help at Southeast Mental Health Center. An employee of the Center testified that Jeffrey's intelligence was "marginal" and that he was "very anxious, immature, and impulsive" when he was initially examined at the Center. Through medication and group therapy, he has improved, but he requires "continuous supervision."

Even if the chancellor's predetermination with respect to the credibility or weight to be given Jeffrey's testimony was questionable, we can hardly say his discretion was abused in view of the testimony of the representative of the Center and the evidence which so emphatically convinced the chancellor the appellant was a person given to misconduct which could affect Jeffrey.

### 2. *Increase in child support.*

At the time of the hearing, the appellee's remaining tenure in the appellant's mobile home was drawing to a close, and, as noted above, she sought a change from the original decree so that she might be allowed to remain there until the children were grown. The home which had been under construction had burned. The appellee testified that on the night it burned, she received a telephone call from a person whose voice she identified as that of the appellant telling her to look out her back window. She did so and saw her construction project in flames. The appellant denied having made the call or having had anything to do with the fire.

In deciding to increase the appellant's child support payments from $40 to $60 per week, the chancellor commented he was not certain the appellant had nothing to do with that fire. The chancellor declined to honor the request of

the appellee that she be allowed to remain in the mobile home, and he based the change in support payments upon the fact that the appellee was about to be required to move from the appellant's mobile home and would need additional funds for dwelling space.

Here again, the applicable standard to be applied is that of "changed circumstances." The circumstances of the appellee and the children were about to change, and we cannot say the chancellor's order in this respect was clearly erroneous, Rule 52, *supra*, or that the chancellor abused his discretion. *Gross* v. *Gross*, 266 Ark. 186, 585 S.W. 2d 14 (1979); *Collie* v. *Collie*, 242 Ark. 297, 413 S.W. 2d 42 (1967).

### 3. *Alimony*.

Ark. Stat. Ann. § 34-1213 (Supp. 1979), provides that alimony may be altered upon application under such circumstances "as may be proper." Our supreme court has required changed circumstances as the predicate for any such alteration. *Drummond* v. *Drummond*, 267 Ark. 449, 590 S.W. 2d 658 (1979); *Hurley* v. *Hurley*, 255 Ark. 68, 498 S.W. 2d 887 (1973). While we cannot close our eyes to the reality of and the policy served by the remarriage of the appellant and the additional expenses he has undertaken, that factor is not compelling. *Hurley* v. *Hurley, supra.* Nor are we compelled by the evidence that the appellee at the time of the hearing had two part-time jobs from which she earned $375 per month. It is clear to us as it must have been to the chancellor that the appellee is not "self-sustaining", *Davis* v. *Davis*, 241 Ark. 171, 406 S.W. 2d 704 (1966), and that the appellant's income has not been so substantially reduced that he is no longer able to pay alimony to the appellee.

Affirmed.