# ARKANSAS DEPARTMENT OF HUMAN SERVICES
## *v.* Curtis Lee BROWN

CA 90-371 811 S.W.2d 326

Court of Appeals of Arkansas
Division II
Opinion delivered June 12, 1991

*Joe Childers*, for appellant.

*R. Bynum Gibson*, for appellee.

ELIZABETH W. DANIELSON, Judge. Appellee Curtis Lee

Brown was adjudicated the father of Deedra and Deven Toney, minors, in a paternity action on July 8, 1988, and ordered to pay $325 per month in child support. His appeal on the paternity issue was affirmed. On July 13, 1989, he was ordered to pay an additional $32.50 per month for the arrearages of child support which had accrued during the appeal as well as to continue paying $325 per month in child support. The 1989 order set out that "any employer/payor shall withhold no more than $357.50 per month from defendant's income. . . ."

Subsequently, Brown, who is a United States army recruiter in Louisiana, received notice from the Internal Revenue Service that the Arkansas Department of Human Services, the appellant, intended to intercept his federal income tax refund and apply it toward reducing his child support arrearages of $3,314.17. He also learned that DHS had reported to the credit bureau that he was delinquent with his child support. The letter notices that Brown received with this information gave him ten days to contact the Child Support Enforcement Unit of DHS if he had any questions and gave him a telephone number to contact. He called the number in Chicot County which was provided but was told his file was in Monticello. Brown then called Monticello but was told they did not have his file and that he should call Chicot County.

Brown petitioned the Chicot County Chancery Court seeking relief as to the matters set out above. Brown claims that he is in compliance with the court's order by paying $357.50 per month and that with DHS withholding his federal income tax return of $780, he is paying more than he was ordered to pay. He also claims that he is not delinquent with his child support and that it was wrong for the state to affect his credit rating by reporting a delinquency.

The trial court found that Brown was current on his child support payments since the July 13, 1989, order. The trial court stated that when it entered the 1989 order, it did not contemplate that DHS through the IRS would intercept Brown's refund check and apply it to child support that was owing from July 1988 to June 1989. Thus, the court reduced his monthly payment by $70 since it became clear DHS could and would continue to intercept the IRS refund each year.

■ The state argues that the trial court's decision was clearly erroneous and should be reversed and that Brown's current child support obligation should be restored to $325 per month, retroactive to February 1990. DHS contends that according to *Reynolds* v. *Reynolds*, 299 Ark. 200, 771 S.W.2d 764 (1989), Brown, the party seeking modification of the chancellor's order, had the burden of showing a change in circumstances and that Brown has not shown a change in circumstances justifying modification of the $325 per month child support order. However, there is no hard and fast rule concerning the specific nature of the changed circumstances. *Eubanks* v. *Eubanks*, 5 Ark. App. 50, 632 S.W.2d 242 (1982).

Brown did not allege that he has suffered a change in financial conditions since the court's 1989 order nor did he assert any of the factors the trial court uses as a guide to justify modifying a previous order. What Brown did argue is that the state went outside the bounds of the chancellor's order when it intercepted his IRS tax refund.

The state argues that the fact that Brown had his federal tax refund intercepted to reduce child support arrearages is not a legitimate justification for reduction of his current child support obligation, and reducing his current support obligation defeats the purpose of the federal tax intercept program. Ark. Code Ann. § 9-14-206(a) (1987) permits state agencies to secure payment of past due child support from federal income tax refunds. DHS contends it would be against public policy to deny enforcement of this statute against parents who get behind or fail to pay their child support payments.

■ The importance of providing financial support for Brown's children is paramount. But, it should not be structured in a way that unnecessarily burdens Brown financially. DHS should be working with Brown and encouraging him to continue to support his children by complying with the court's orders. Therefore, this court will modify the chancellor's order and set child support for Brown's children at $325 per month with no monies paid toward arrearages since the state will continue to withhold Brown's income tax refund and apply it towards the arrearages.

Based on the testimony, we believe the Department of

Human Services was oppressive and out of line in the manner in which it dealt with Brown as well as by reporting him to the credit agencies. Therefore, we will further modify the chancellor's order as follows: DHS is forbidden to report Brown to the credit bureaus unless he becomes $1,000 in arrears of his child support payments from the 1989 order; DHS is to write a letter to the appropriate credit bureaus, informing them that Brown is current in his child support payments and not delinquent, with a copy of that letter sent to Brown, a copy placed in his DHS file, and a copy sent to this court; and finally, DHS is directed to notify Brown as to where he can call for information regarding the state of his child support obligation.

The record reflects that DHS has acted in an unreasonable and detrimental manner in their treatment of Brown and his children. Such behavior by DHS defeats any benefits that it might otherwise accomplish and renders no service to the public it is set up to serve.

 Chancery cases are reviewed *de novo* on appeal, but the findings of the chancellor will not be reversed unless clearly erroneous. *Bolan* v. *Bolan*, 32 Ark. App. 65, 796 S.W.2d 358 (1990). When the case is as fully developed as it is here and we can see where the equities lie, we may, on *de novo* review, enter the judgment that should have been entered by the trial court. *Estate of Houston* v. *Houston*, 31 Ark. App. 218, 792 S.W.2d 342 (1990).

Affirmed as modified.

COOPER, J., agrees.

ROGERS, J., concurs.

JUDITH ROGERS, Judge, concurring. I concur in the modification of the appellee's child support obligation, which has the result of reinstating the chart amount without consideration of the tax refund intercept and without additional sums to be applied toward the arrearage. I agree for several reasons.

First, I point out that any reduction based on the refund intercept results in a windfall to the payor spouse. Child support is set based on the payor's *net income*, which *includes* a deduction for withholding. Since the payor spouse is given credit initially for

such amounts withheld, the result of any further reduction based on the intercept of a refund is that the spouse is twice benefitted in a way that was not intended. The injustice of allowing this reduction is apparent in that this remedy would inure to the benefit of only those spouses who are behind in their payments, which would not be available to those who are current in their support.

I am also perplexed and dismayed that appellee was reported to the credit bureau, and from the record it appears that appellee's attempts to rectify these matters were thwarted by the bureaucracy. While I hasten to acknowledge that appellee placed himself in this position by failing to pay support or reserve funds to cover these payments during the pendency of the first appeal, appellee has since the July 1989 order remained current in his support and has faithfully been paying additional amounts to be applied toward the arrearage. Under Ark. Code Ann. § 9-14-206(a) (Repl. 1991), the Child Support Enforcement Unit is charged with the responsibility of administering the state plan for child support enforcement required under Title IV-D of the Social Security Act. According to federal regulations, the state must establish by law procedures for making information regarding the amount of overdue support owed available to consumer reporting agencies. 45 C.F.R. § 302.70 (a)(7) (1990). However, the regulations afford a degree of flexibility in implementing this requirement as it is provided that the state need not apply this procedure in an individual case if its application would not be appropriate, taking into account "the payment record of the parent, the availability of other remedies and other relevant considerations." 45 C.F.R. § 302.70 (b) (1990). Thus, without betraying its responsibility of administering the enforcement program, DHS need not have made the report to the credit bureau. The Department ought to recognize the efforts of payor spouses who remain current in paying support and are diligently making payments toward arrearages. There is room for equity in the performance of it duties.

In any event, the child has a right to receive and benefit from support payments and the department has the duty to see that support obligations are enforced; I, therefore, agree with the restoration of the chart amount in this instance. I realize that the chancellor earnestly tried to balance the equities here, but appellee should not be given the benefit of over-withholding.